UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

NOSAKHARE ONUMONU,

               Petitioner,               Case No. 1:08-cv-219

v.                                    Honorable Robert Holmes Bell

BLAINE C. LAFLER,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. Petitioner was convicted in the Ionia County Circuit Court of being a prisoner in possession

of a weapon, MICH. COMP. LAWS § 800.2834. On June 3, 2003, he was sentenced as an habitual

offender to imprisonment of fifty-seven months to ten years. In his amended *pro se* petition (docket

#5), Petitioner raises five grounds for relief, as follows:

> I.      THE TRIAL COURT['S] REFUSAL TO HOLD A FORMAL COLLOQUY
> TO ALLOW THE PETITIONER TO EXPRESS HIS DISSATISFACTION
> WITH HIS ASSIGNED COUNSEL WAS AN ABUSE OF DISCRETION
> THAT DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT
> TO COUNSEL AND WARRANT[S] THE REVERSAL OF HIS
> CONVICTION AND [A] NEW TRIAL.
>
> II.    THE TRIAL COURT VIOLATED THE PETITIONER'S DUE PROCESS
> RIGHT BY REFUSING TO ALLOW THE TRIAL DEFENSE COUNSEL
> TO WITHDRAW FROM REPRESENTING THE PETITIONER WHERE
> IN A PRIOR CASE THE TRIAL COURT HAD ALLOWED COUNSEL TO
> WITHDRAW DUE TO A BREAKDOWN IN THE ATTORNEY-CLIENT
> RELATIONSHIP WAS [SIC] AN ABUSE OF DISCRETION THAT
> DENIED THE PETITIONER'S SIXTH AMENDMENT
> CONSTITUTIONAL RIGHT TO COUNSEL AND WARRANT[S] THE
> REVERSAL OF HIS CONVICTION AND [A] NEW TRIAL.

III. THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL FAILED TO SUPPORT HIS CLIENT'S REQUEST TO ADDRESS THE COURT AS TO THE POTENTIAL CONFLICT AS A MATTER OF PROCEDURAL DUE PROCESS OR TO LODGE A FORCEFUL OBJECTION WHEN THAT REQUEST WAS REFUSED.

IV. DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO TIMELY OBJECT AND MOVE FOR A MISTRIAL WHERE THE PROSECUTOR INTRODUCED UNFAIRLY PREJUDICIAL EVIDENCE THAT PETITIONER WAS INCARCERATED FOR ESCAPING FROM PRISON.

V. PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AND COUNSEL'S PERFORMANCE ESTABLISHES GOOD CAUSE FOR BRINGING THE POST-APPEAL MOTION FOR RELIEF FROM JUDGMENT.

Respondent has filed an answer to the petition (docket #11) stating that the grounds should be denied because they are procedurally defaulted or have no merit. Petitioner filed a response (docket #27).

Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit.

Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Pre-Trial Proceedings

Before trial, Petitioner made several attempts to replace his court-appointed counsel.

At the beginning of a hearing on various pretrial motions held on March 10, 2003, the following exchange occurred:

> MR. SYKES [appointed trial counsel]: Your Honor, I filed two motions with the Court but prior to the Court hearing on the motions Mr. Onumonu has requested that I make a motion on his behalf. He had sent a letter to the Court dated February 14, 2003 in which he requested that I be removed as his attorney because of what he perceived as a conflict of interest.
>
> I'm not aware of any conflict of interest. I have no objection to continuing with my representation of Mr. Onumonu but he wanted me to bring that to the Court's attention before proceeding with the motions.

THE COURT: Mr. Schafer, are you prepared to respond to that or doesn't it make any difference to you?

MR. SCHAFER: Your Honor, obviously we object. I don't know of any conflict of interest. I think Mr. Sykes has been doing an excellent job on behalf of Mr. Onumonu and we're ready to proceed.

THE COURT: The letter itself did not express what the conflict would be. A letter itself is not a basis for dismissal. I don't know what it would be so I'll deny the request.

THE DEFENDANT: Can I address the Court?

THE COURT: Mr. Onumonu, you've done that with your motion. There's nothing in the motion that states a conflict of interest. So I'll deny the motion.

(03/10/03 Motion Tr., 5-6, docket #15.) Later in the hearing, Petitioner again asked his counsel to withdraw from representing him. The following exchange occurred:

MR. SYKES: Your Honor, again Mr. Onumonu is requesting that I withdraw as his attorney.

THE COURT: There is no basis for that being done, Mr. Sykes.

THE DEFENDANT: I believe there is a basis, Judge Miel.

THE COURT: Mr. Onumonu you filed a letter that was sent to the Court and you set forth no basis for me to do that. I'm not doing that.

THE DEFENDANT: I understand that but I had him before on a previous case and I had to fire him for conflict of interest and for you to give him to me again, to defend me on another case that I'm feeling that he's not doing his job. It took him three months to get my preliminary examination [transcript] before he filed his motion. I can't see that being accurately done.

THE COURT: I've already denied your motion. You can appeal it if you'd like to.

THE DEFENDANT: Okay. I will.

(03/10/03 Motion Tr., 7-8, docket #15.)

- 3 -

Petitioner's counsel later filed a motion to withdraw. A hearing was held on April 21, 2003, about two weeks before Petitioner's case was scheduled to go to trial. The following exchange occurred:

> MR. SYKES: Your Honor, when we were last in court Mr. Onumonu requested that I be removed as his attorney. The Court denied that request. Subsequent to that hearing I received a letter from Mr. Onumonu in which he threatened among other things, to sue me, to sue my law firm, and to file a grievance against me. Based on those threats, if you will, from Mr. Onumonu, I felt it was in the best interests of both me and Mr. Onumonu to file this motion to withdraw. It's unfortunate that Mr. Onumonu feels that way. However, for whatever reason, he does not want to work with me in this case. I'd ask the Court to allow me to withdraw as his attorney of record.
>
> THE COURT: This is scheduled for trial on May 7th?
>
> MR. SYKES: I believe so.
>
> THE COURT: Mr. Schafer?
>
> MR. SCHAFER: Your Honor, I will leave it up to the discretion of the Court other than we would object to any adjournment of the trial. The People have subpoenaed witnesses and we would be prepared to proceed on May 7th.
>
> THE COURT: Anything further, Mr. Sykes?
>
> MR. SYKES: I have nothing further.
>
> THE COURT: Mr. Sykes, I have reviewed the file. I have reviewed your method of practice in this case and don't think anything you're doing here is inappropriate. I think this is Mr. Onumonu trying to control the system and I'm not going to allow him to do it. He's got you controlling his defense. You're doing what has to be done and I don't think there are any concerns you need to have regarding what you're doing here, regarding any objections he might make to anybody. I'm not going to allow him to control this trial and I'm denying your motion. We don't have anybody who can come here and conduct the trial and I'm not going to let it happen. So your motion to withdraw is denied.

(04/21/03 Motion Tr., 10-11, docket #15.)

### B.     Trial Court Proceedings

Petitioner was tried before a jury on May 7, 2003. The charge stemmed from Petitioner's alleged possession of a weapon while incarcerated in the Bellamy Creek Correctional Facility. The prosecution claimed that a corrections officer conducting a search of Petitioner found a home-made knife or "shank" on his person, and that upon discovery of the shank, Petitioner ran and tossed the shank. The defense theory was that Petitioner cooperated with the search and never possessed or threw a shank. He asserted that the officers planted the shank because they were angry about the fact that Petitioner was going to get a sentence reduction on a prison escape conviction.

Jerry Rickney testified that he worked as the Electric Monitoring Officer at the Bellamy Creek Correctional Facility on May 21, 2002. (Trial Transcript (Tr.) 81, docket #16.) Rickney testified that there were two cameras in the area where the incident occurred. (Tr. 82.) When Rickney received a call from Officer Sage that he needed to shake down a prisoner, Rickney pointed a camera in his direction in case anything happened. (Tr. 84-85.) When Petitioner fled from Officer Sage, Rickney followed him with the camera. (Tr. 85.) At one point, the yard shack got in the way of the camera shot, so Rickney switched to another camera. There was a brief gap in time while Rickney switched cameras. (*Id.*) Rickney did not see Petitioner in possession of a weapon or throw a weapon, but testified that he was a long distance from Petitioner and the cameras have a very limited ability to zoom in on small objects. (Tr. 86-88).

Corrections Officer Rodney Sage testified that he was on duty in the yard at the Bellamy Creek Correctional Facility on May 21, 2002. (Tr. 89-90.) Sage observed Petitioner leaving the kitchen at about noon wearing a heavy coat and gloves even though it was a fairly warm day. (Tr. 90.) There were other prisoners in the yard wearing coats and hats, but the other prisoners

were not wearing gloves. (Tr. 100.) Petitioner's gloves made Sage suspicious because prisoners sometimes wear gloves to protect their hands if they plan to get into a fight. (Tr. 95.) In addition, Petitioner had his right hand up under his coat around the waist. (Tr. 90.) Sage stopped Petitioner for a shakedown, which is a routine clothed body search. (Tr. 91.) Petitioner initially complied with the search, but began to lower his arms when Sage got to the waist area during the pat-down. (Tr. 92.) Sage felt something in the waistband of Petitioner's pants and instructed Petitioner to turn around and face him. (Tr. 92, 106.). Sage lifted Petitioner's shirt and observed a weapon in Petitioner waistband. Sage reached for the weapon, which had a chrome top and was wrapped with yellow hair ties. (*Id.*) Petitioner pushed Sage's hand away, turned, and fled. Sage pursued Petitioner and made a call on his radio that he "had one running" and he had a weapon. (*Id.*) When Petitioner encountered Officer Brown, Sage saw him fling the weapon to the ground. (Tr. 92-93, 94, 98.) Shortly thereafter, Officer Burns tackled Petitioner. (Tr. 93.) The officers stripped Petitioner's pants down to check for other weapons and then handcuffed him. Officer Lumbert picked up the weapon and gave it to Sage, who put it in the evidence locker. (Tr. 93-94.)

Sage testified that he had no previous contact or run-ins with Petitioner. (Tr. 90, 118.) Sage recalled testifying at the preliminary examination that Petitioner had unzipped his coat and pushed Sage off balance, but those events could not be verified by the surveillance video. (Tr. 106-107.) Sage admitted writing in his Major Misconduct Report that he "recovered" the weapon and did not mention Officer Lumbert. (Tr. 109-110.)

Corrections Officer David Kerr testified that Officer Sage radioed him to watch Sage's back while he searched Petitioner. (Tr. 120.) When Petitioner broke free from Sage, Petitioner got within six feet of Kerr, who saw something shiny sticking out of the tip of Petitioner's

hand.  (Tr. 121, 124, 127.)  Kerr tried to grab Petitioner but missed him.  (Tr. 121.)  Kerr pursued

Petitioner, but lost sight of the weapon and did not see Petitioner throw anything.  (Tr. 126-27.)

Officer Jerry Lumbert testified that he responded when he heard Sage's radio call that

a prisoner was running with a weapon.  (Tr. 132.)  By the time Lumbert arrived on the scene,

Petitioner had been captured.  Lumbert asked Sage if they got the weapon.  Sage responded that

Petitioner had thrown it in the grass and pointed to the area where he saw Petitioner throw the

weapon.  (*Id.*)  Lumbert went to the area indicated by Sage and found a home-made weapon.  When

Lumbert showed it to Sage, he said "That's the one."  (Tr. 137.)  Lumbert gave the weapon to Sage.

(Tr. 133.)

Corrections Officer David Brown testified that Sage called on the radio: "I have one

with a weapon, he's running."  (Tr. 145.)  Brown saw Petitioner running with Sage and Kerr right

behind him.  Brown tried to restrain Petitioner, but he got away.  (*Id.*)  Brown did not personally see

Petitioner possess or throw a weapon.  (Tr. 146.)

Corrections Officer Anthony Burns also heard Sage's radio transmission and saw

Petitioner running toward him.  (Tr. 150-153.)  Burns saw a weapon in Petitioner's hand, but did not

see him throw anything.  (Tr. 153-55.)  Burns testified that he tackled Petitioner.  (Tr. 153-54.)

When the prosecutor asked Burns if he was familiar with Petitioner before that incident, Burns

responded, "No, other than -- I'm on the emergency response team and I knew we recovered him

from escape."  (Tr. 158.)

State Police Detective Sergeant Michael Morey testified that he interviewed Petitioner

regarding the incident.  (Tr. 141.)  Petitioner told Morey that he was set up by the corrections

officers.  He alleged that during the search, Sage reached in his own pocket with his left hand and

came out with a metal object. Petitioner believed that Sage was going to use the object to frame him for a crime, so he took off running. (*Id.*) Petitioner claimed that he never possessed a weapon. Morey further testified that he viewed the videotape, which did not match Petitioner's story at all. (Tr. 142.) Morey did not check the weapon for fingerprints after collecting it. (Tr. 142.) Morey agreed that Sage had his back to the camera when reaching his right hand toward Petitioner's waist. (Tr. 141-143).

Petitioner testified that, before the shakedown, Sage tried to bump him when Petitioner walked into the chow hall so that he could write a fake misconduct ticket against Petitioner. (Tr 164.) When Petitioner came out of the chow hall, Sage stopped him for a shakedown. (*Id.*) Petitioner claims that he was wearing a coat, hat and gloves because it was cold outside. (Tr. 167.) During the shakedown, Sage asked Petitioner for the weapon. Petitioner responded that he did not have one. (Tr. 164-65.) Sage instructed Petitioner to lift his coat. (Tr. 165.) At the same time, Sage was reaching into his left pocket and pulled something out of his pocket that had a sharp point. (Tr. 165, 177-78.) Petitioner testified that Sage kept the weapon cuffed in his left hand so it could not been seen on camera. (Tr. 179-80.) Petitioner believed that Sage was going to try to set him up so he knocked Sage's hand and took off running. (Tr. 165.) Petitioner testified that he intentionally tried to fall in front of a camera so the officers could not plant the weapon on him. (Tr. 183.) Petitioner denied having a weapon in his possession or throwing a weapon. (Tr. 167-168).

Petitioner testified that he ran because Sage was about to set him up with a knife. (Tr. 168.) Petitioner believed that Sage tried to set him up due to a past run-in they had at the Michigan Reformatory. (Tr. 170.) While Petitioner was at the Michigan Reformatory, he wrote a grievance

against one of Sage's co-workers for trying to kick a fence in Petitioner's face. (Tr. 169.) When Petitioner tried to make Sage a witness, Sage allegedly came to his cell and told him that he is not a witness for inmates. Petitioner then wrote a grievance against Sage. Petitioner testified that Sage brought the grievance back to his cell the next day and tore it up in his face. (*Id.*) On cross-examination, Petitioner admitted not giving the same explanation to Sgt. Morey when asked why Sage would have framed Petitioner. (Tr. 170.) Petitioner told Sgt. Morey that the officers were upset because he had come back from being sentenced to a time reduction. (*Id.*) The following exchange occurred when the prosecutor inquired further about the time reduction:

> Q: [BY PROSECUTOR]: Time on what?
>
> A: My sentence.
>
> Q: Sentence on what?
>
> A: On the offense that I'm in prison for.
>
> Q: Okay, and which offense was that you were referencing Mr. Onumonu?
>
> MR. SYKES: I object to that question. I don't think that's relevant what the offense is. He's explaining that it was based on an attempt to get a time cut. It's irrelevant what the offense is.
>
> MR. SCHAFER: I think it's certainly relevant, your Honor, because
>
> THE WITNESS: You know what, your Honor, I'll -
>
> THE COURT: Mr. Onumonu.
>
> THE WITNESS: Oh.
>
> MR. SCHAFER: It goes to his credibility.

THE COURT: I guess - I assume Mr. Morey is going to testify on rebuttal.[1] I'll overrule the objection. I think if he made a statement to Mr. -- Detective Morey, he can talk -- ask about that statement because it was made by, I assume, Mr. Onumonu. Detective Morey will testify regarding it. Go ahead, Mr. Shafer.

BY MR SCHAFER:

Q: What was your statement specifically to Officer Morey?

A: I told Officer Morey that I felt the Officers were upset because I was getting time reductions.

Q: Specifically a time reduction on what? You told him, didn't you?

A: Are you talking about the offense? I have no problem telling you if that's what you want to know. I've got nothing to hide.

Q: All I want to know if what you told Officer Morey specifically.

A: Oh, specifically, Officer Morey asked me, why do you think he tried to set this knife up on you? I said well, you know, I just went to Court on the 20th, maybe they were upset because I as [sic] trying to get a time reduction and was about to get a time reduction for my previous case, which was an escape from MR dorms. I hopped over a fence.

(Tr. 171-172). Over defense trial counsel's objection based on timeliness and prejudice, the trial court also permitted the prosecutor to elicit testimony that Petitioner had prior convictions for armed robbery and unarmed robbery. (Tr. 187-191.)

At the conclusion of trial, the jury found Petitioner guilty as charged of being a prisoner in possession of a weapon. (Tr. 222-24). On June 3, 2003, Petitioner was sentenced as an habitual offender to a consecutive prison term of fifty-seven months to ten years. (Sentencing Transcript, 17-18, docket #15.)

---

[1]Detective Morey did not testify on rebuttal.

## C.    Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals.  His brief, which was filed by counsel on January 5, 2004, raised the following two claims of error:

I.      DID THE TRIAL COURT VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY REFUSING TO ALLOW DEFENSE COUNSEL TO WITHDRAW FROM REPRESENTING APPELLANT, WHERE, IN A PRIOR CASE, APPELLANT HAD DISCHARGED THE SAME COUNSEL AND THE TRIAL COURT HAD ALLOWED COUNSEL TO WITHDRAW DUE TO A BREAKDOWN IN THE ATTORNEY-CLIENT RELATIONSHIP.

II.     WAS DEFENSE COUNSEL CONSTITUTIONALLY INEFFECTIVE IN FAILING TO TIMELY OBJECT AND MOVE FOR A MISTRIAL WHERE THE PROSECUTOR INTRODUCED UNFAIRLY PREJUDICIAL EVIDENCE THAT APPELLANT WAS INCARCERATED FOR ESCAPING FROM PRISON.

(See 1/5/04 Def.-Appellant's Br. on Appeal, docket #17.)  The Michigan Court of Appeals granted appellate counsel's motion to file a supplemental brief, in which he raised a third claim:

III.    THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS AT SENTENCING BY SCORING AN OFFENSE VARIABLE AND INCREASING THE STATUTORY SENTENCING GUIDELINE RANGE BASED ON ALLEGED FACTS WHICH THE PROSECUTOR DID NOT CHARGE AND PROVE BEYOND A REASONABLE DOUBT AT A TRIAL OR HAVE APPELLANT ADMIT AT A PLEA.

(See 10/19/04 Def.-Appellant's Br. on Appeal, docket #17.)  By unpublished opinion issued on November 9, 2004, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences.  (See 11/9/04 Mich. Ct. App. Opinion (MCOA Op.), docket #17.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same three claims raised before and rejected by the Michigan Court of

Appeals.  By order entered July 26, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (See Mich. Ord., docket #18.)

### D.      Post-Conviction Relief

On February 27, 2006, Petitioner filed a motion for relief from judgment in the Ionia County Circuit Court raising three new claims:

I.      DEFENDANT ONUMONU WAS DENIED HIS STATE AND FEDERAL DUE PROCESS RIGHTS WHEN THE TRIAL COURT REFUSED TO HOLD A FORMAL COLLOQUY TO ALLOW DEFENDANT TO EXPRESS HIS DISSATISFACTION WITH HIS ASSIGNED COUNSEL.

II,     DEFENDANT ONUMONU WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL [BY FAILING TO SUPPORT HIS CLIENT'S REQUEST TO ADDRESS THE COURT AS TO THE POTENTIAL CONFLICT AS A MATTER OF PROCEDURAL DUE PROCESS OR TO LODGE A FORCEFUL OBJECTION WHEN THAT REQUEST WAS REFUSED].

III.    DEFENDANT ONUMONU WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AND COUNSEL'S PERFORMANCE ESTABLISHES GOOD CAUSE FOR BRINGING THE POST-APPEAL MOTION FOR RELIEF FROM JUDGMENT.

The trial court denied his motion on June 27, 2006.  Petitioner raised the same three claims in a delayed application for leave to appeal in the Michigan Court of Appeals.  The court of appeals issued an order on October 4, 2006, dismissing Petitioner's delayed application for leave to appeal for failure to pursue the case in conformity with the rules.  (See 10/4/06 Mich. Ct. Ord., docket #19.) Thereafter, Petitioner filed a second delayed application for leave to appeal on June 27, 2007.  The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal on August 1, 2007 and December 28, 2007, respectively, for failure to meet the

- 12 -

burden of establishing entitlement to relief under M.C.R. 6.508(D).  (See 8/1/07 Mich. Ct. Ord., docket #20; 12/28/07 Mich. Ord., docket #21.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

<u>**Discussion**</u>

I.      **Trial Court's Denial of Substitute Counsel: Grounds I and II** [2]

Petitioner's first two ground for habeas corpus relief relate to the trial court's refusal to allow Petitioner to seek substitute counsel due to an alleged conflict of interest with his appointed counsel, Robert Sykes, Jr.  In his first ground for habeas corpus relief, Petitioner contends that the trial court violated his Sixth Amendment rights by refusing to hold a formal colloquy to allow Petitioner to explain his dissatisfaction with appointed counsel.  In Ground II, Petitioner claims that the trial court violated his due process rights and his Sixth Amendment right to counsel when it refused to allow defense counsel to withdraw, particularly when the court had permitted counsel to withdraw from representing Petitioner in a previous criminal action.  Petitioner seeks an evidentiary hearing to develop his Sixth Amendment claims, which I will address before reaching the merits of Petitioner's constitutional claims.

A.      <u>Evidentiary hearing</u>

Petitioner argues that because the trial court did not permit him to fully lodge his concerns on the record regarding counsel's alleged conflict of interest, this Court should conduct an evidentiary hearing to determine whether his Sixth Amendment rights were violated by the trial

---

[2]Respondent contends that Petitioner's first and third grounds for habeas corpus relief are procedurally defaulted because they were raised for the first time in his motion for relief from judgment.  The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

court's refusal to grant his request for substitute counsel. The Supreme Court has held that pursuant to AEDPA, a prisoner may introduce new evidence through an evidentiary hearing "only if [the prisoner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (citing *Williams*, 529 U.S. at 431-37). Section 2254(e)(2) provides:

> (2)   If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A)   the claim relies on-
> >
> > > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). A prisoner is at fault in failing to develop the evidence if there is a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432. The required diligence is "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

Petitioner does not allege or show that he moved for an evidentiary hearing to develop his claims in the trial court or the Michigan Court of Appeals. Consequently, Petitioner did not make a reasonable effort to develop the factual basis of a claim in the state courts. Because Petitioner is at fault for failing to develop the record in the state courts, this Court is barred from holding an

evidentiary hearing unless he meets the narrow requirements of § 2254(e)(2). Petitioner's claim does not rely on a new rule of constitutional law. In addition, Petitioner's claim does not rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. Petitioner has been aware of counsel's alleged conflict of interest since counsel was appointed to represent him in this case. Likewise, any breakdown in the relationship between Petitioner and counsel in this case was known to Petitioner since counsel represented him in 2003. Petitioner fails to meet the requirements of § 2254(e)(2)(A); therefore, the Court may not hold an evidentiary hearing to develop the factual basis of his claim.

Even if Petitioner could overcome the initial statutory hurdle to obtaining a hearing, "the fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). The Supreme Court recently explained that, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Petitioner had not alleged what new evidence would be gained by holding an evidentiary hearing or how that evidence would support his Sixth Amendment claims. After reviewing the existing record, and accepting Petitioner's allegations as true unless they are disproved by the record, I conclude below that Petitioner's Sixth Amendment claims are without merit.

B. Trial court's denial of substitute counsel

In Ground II, Petitioner claims that the trial court violated his due process rights and his Sixth Amendment right to counsel when it refused to allow defense counsel to withdraw,

particularly when the court had permitted counsel to withdraw from representing Petitioner in a previous criminal action. Petitioner avers that Mr. Sykes was appointed to represent him in 2000 when he was charged in Ionia County with escape and unarmed robbery. (Pet. Aff. § 2, Appendix E, docket #2-6.) Petitioner claims that he lost his trust and confidence in Sykes because he was a prosecutor for the City of Ionia. As a result of Petitioner's lack of confidence, there was a breakdown in the attorney-client relationship that resulted in counsel moving to withdraw from the case. The trial court, the same judge that denied counsel's motion to withdraw in the instant case, granted counsel's motion in the prior case. (*Id.*)[3] When Sykes was appointed to represent Petitioner in this case, Petitioner believed that Sykes harbored animosity against him as a result of his previous representation of Petitioner. (Pet. Aff. § 6.) Petitioner further alleges:

> Robert Sykes['] animosity turned into an irreconcilable dispute over, whether he must subpoena the Prisoner Legal Services of Michigan Director Sandra Girard to produce my previous letter of complaint against the corrections officer Rodney Sage vowed attempts to set me up, and whether to call prisoner Airick Smith (#371485) as my witness and the other prisoner's [sic] identified on the tape recording video in regards to whether they saw officer Sage attempt to plant the weapon on me, which resistence to these ideas was a result of a conflict of interest that resulted in a total lack of communication that prevented an adequate defense.

(*Id.*) On February 14, 2003, Petitioner sent a letter to the trial court requesting substitute counsel because he and Sykes were having an "irreconcilable conflict of interest." (Pet. Aff. § 7.) Petitioner avers that he "did not see or communicate with my trial defense attorney Robert Sykes for three-months after my February 14, 2003 letter to the trial court, and in fact, I did not have the opportunity to discuss my case with Attorney Sykes until a week before my trial." (Pet. Aff. § 8.)

---

[3]In his brief on direct appeal in the Michigan Court of Appeals, Petitioner alleges that he filed a grievance against counsel in 2000 as a result of that representation, but does not provide any further information regarding the nature of the grievance or the outcome of the proceedings. Petitioner does not mention the grievance in his affidavit.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'" *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

The Michigan Court of Appeals addressed Petitioner's claim on direct appeal as follows:[4]

---

[4]While appellate counsel raised the issue as a due process claim, the Michigan Court of Appeals applied Sixth Amendment principles in evaluating Petitioner's claim. In this Court, Petitioner brings his claim under the Fifth Amendment Due Process Clause and the Sixth Amendment. The Sixth Amendment, and not substantive due process, is the basis upon which a plaintiff may challenge a trial court's refusal to grant a request for substitute counsel. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("'[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due

[D]efendant first claims that he was denied due process of law when the trial court denied his request for substitute counsel. An indigent defendant is guaranteed the right to counsel, but he is not entitled to have an appointed attorney replaced simply by making such a request. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with respect to a fundamental trial tactic. *Id.* The filing of a grievance against counsel by itself does not justify substitution of counsel. *People v Mitchell*, 454 Mich 145, 170 n 30; 560 NW2d 600 (1997). A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion. *Traylor*, supra at 462.

Defendant never explained the nature of his conflict with appointed counsel. Although three years earlier the court had granted counsel's motion to withdraw in a prior representation of defendant, defendant provided no information concerning that case. A prior conflict regarding trial strategy in another case does not in itself show that counsel could not represent defendant under other circumstances. Therefore, there is no showing that the court abused its discretion.

(MCOA Op. 1.)

The Michigan Court of Appeals was not aware at the time of its decision that the conflict alluded to by Petitioner was Sykes' representation of the City of Ionia. It was not until the post-convictions proceedings that Petitioner disclosed the nature of the alleged conflict of interest. It is clearly established federal law that a defendant's Sixth Amendment right to counsel is violated "when counsel is burdened by an actual conflict of interest." *Strickland v. Washington*, 466 U.S. 668, 692 (1984); accord *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (holding that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief"); *Fautenberry v. Mitchell*, 515 F.3d 614, 628 (6th Cir. 2008) ("[A] habeas petitioner can establish an ineffective-assistance claim without having to show prejudice if he demonstrates that his counsel labored under an 'actual conflict' of interest.'").

---

process.'" (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7(1997)).

To obtain relief on such grounds, a defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350; *Mickens*, 535 U.S. at 171 n.5 ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."); *see also Whiting v. Burt*, 395 F.3d 602, 611 (6th Cir. 2005) ("[A] [mere] claim of a conflict of interest, by itself, is insufficient to justify reversal of a conviction.").

Petitioner has not established an "actual conflict" arising from Sykes' representation of the City of Ionia at the same time he was representing Petitioner in the Ionia County Circuit Court. The City of Ionia is a different entity from Ionia County and was not involved in prosecuting Petitioner. *See Fautenberry v. Mitchell*, 515 F.3d 614, 628 (6th Cir. 2008) (no actual conflict of interest was shown as to defense attorney in aggravated murder prosecution, based on defense counsel's position as trustee for township where victim's body had been found). Moreover, *Cuyler*'s lessened standard of proof has never been extended by the United States Supreme Court to any conflict other than joint representation of co-defendants, which is not the type of conflict alleged by Petitioner. *Smith v. Hofbauer*, 312 F.3d 809, 818 (6th Cir. 2002) (citing *Mickens v. Taylor*, 535 U.S. 162 (2002)). Therefore, the conflict of interest alleged by Petitioner is not the type of conflict that would require the trial court to appoint substitute counsel in order to avoid a violation of Petitioner's Sixth Amendment rights.

Petitioner has failed to allege any other facts that would establish good cause warranting the appointment of substitute counsel. As discussed by the Michigan Court of Appeals, the fact that the trial court permitted counsel to withdraw in a previous case, standing alone, was not good cause for substitution of counsel. While it was Petitioner's subjective belief that Sykes harbored animosity toward him as a result of the previous representation, there is no indication from

the record whatsoever that Sykes was hostile toward Petitioner. To the contrary, Sykes stated on the record at the March 10, 2003, motion hearing that he did not know of any conflict with Petitioner and expressed his willingness to continue the representation. Later, at the hearing on counsel's motion to withdraw, Sykes told the Court, "It's unfortunate that Mr. Onumonu feels that way. However, for whatever reason, he does not want to work with me in this case." (4/21/03 Motion Tr. 10-11, docket #15.)

Petitioner further claims that Sykes' alleged animosity led to a breakdown in the attorney-client relationship that prevented an adequate defense. However, the trial record shows that counsel was prepared for trial and zealously represented Petitioner. Counsel effectively cross-examined prosecutorial witnesses and called three witnesses for the defense, including Petitioner. While Petitioner cites disagreements with counsel over his investigation and evidentiary matters, they fall far short of establishing a complete breakdown in the attorney-client relationship. Moreover, Petitioner's claim that he did not see or communicate with his counsel for three months after his February 14, 2003 letter to the court is belied by the record. Both counsel and Petitioner were present at a pre-trial motion hearing on March 10, 2003 and the hearing on the motion to withdraw held on April 21, 2003. In the absence of good cause, Petitioner cannot establish a violation of his Sixth Amendment right to counsel resulting from the trial court's denial of substitute counsel. Accordingly, the decision of the Michigan Court of Appeals that the trial court was not an unreasonable application of Supreme Court precedent.

C. Trial Court's refusal to hold a formal colloquy regarding request for substitute counsel

Petitioner makes a related claim in his first ground for habeas corpus relief that the trial court violated his Sixth Amendment rights by refusing to hold a formal colloquy to allow

Petitioner to explain his dissatisfaction with appointed counsel. Although the Sixth Circuit has held that the adequacy of the court's inquiry into the defendant's complaint is one factor the court may consider in evaluating whether the trial court abused its discretion in denying a motion for substitute counsel, *Mooneyham*, 473 F.3d at 291, the Supreme Court has not established a free-standing Sixth Amendment right for a defendant to formally address the Court regarding a request for substitute counsel. In this case, Petitioner wrote a letter to the Court requesting substitute counsel. While the trial court did not afford Petitioner the opportunity to provide further explanation on the record, Petitioner spoke through his counsel at the March 20 and April 21, 2003 motion hearings. Moreover, even assuming that Petitioner had the opportunity to present the trial court with all of the arguments that he now presents in his habeas corpus petition, I already concluded that Petitioner failed to show good cause for substitution of counsel. Consequently, the trial court's refusal to allow Petitioner further opportunity to address the Court did not violate Petitioner's Sixth Amendment rights.

II. **Ineffective Assistance of Trial Counsel: Grounds III and IV**

Petitioner raises two claims of ineffective assistance of trial counsel. In his third ground for relief, Petitioner contends that his counsel was ineffective when he failed to support Petitioner's request to address the court as to the potential conflict of interest and failed to make a forceful objection when the trial court refused that request. In Ground IV, Petitioner claims that his trial counsel was constitutionally ineffective for failing to timely object and move for a mistrial where the prosecutor introduced unfairly prejudicial evidence that appellant was incarcerated for escaping from prison.

In *Strickland,* 466 U.S. at 687-88, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective

assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

Petitioner first claims that his counsel was ineffective when he failed to support Petitioner's request to address the court as to the potential conflict of interest and failed to make a forceful objection when the trial court refused that request. Petitioner's claim is without merit. During the March 10, 2003 pre-trial hearing, trial counsel twice communicated to the court that Petitioner was requesting substitute counsel. Counsel later filed a motion to withdraw, which was denied by the trial court. Thus, while unsuccessful, counsel directly communicated Petitioner's request to the trial court and filed a motion to withdraw. Petitioner cannot fault counsel for telling the court that he was not aware of any conflict of interest or for failing to advocate Petitioner's position more forcefully when Petitioner himself had not identified an actual conflict of interest. Accordingly, counsel's performance was not objectively unreasonable. "When deciding ineffective-

assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). Because counsel's performance did not fall below an objective standard of reasonableness, the Court need not reach the question of prejudice.

Petitioner also claims that his trial counsel was constitutionally ineffective for failing to timely object and move for a mistrial where the prosecutor introduced unfairly prejudicial evidence that appellant was incarcerated for escaping from prison. The first reference to Petitioner's conviction for prison escape came during the testimony of Office Burns. The following exchange occurred between the prosecutor and Office Burns:

> Q: Okay, prior to May 21st, were you familiar with inmate Onumonu?
>
> A: I knew who he was, yeah.
>
> Q: All right, was that -- when you say I knew who he was, was that relationship any greater or lesser than any of the 1,300 inmates out there?
>
> A: No, other than -- I'm on the emergency response team and I knew we recovered him from escape.
>
> Q: Okay, other than that, but -- at Bellamy Creek, he was just another inmate?
>
> A: Yeah, correct.

(Tr. 157-58.) Trial counsel did not object to Burns' testimony. The issue of Petitioner's escape came up again during the prosecutor's cross-examination of Petitioner when the prosecutor sought to elicit Petitioner's testimony that he told Sergeant Morey that the officer planted the weapon on him because the officers were upset that he was getting a reduction on his sentence for the escape conviction. In that instance, defense counsel objected to the prosecutor's question on the ground that

the specific underlying offense for which Petitioner was getting the sentence reduction, i.e., prison escape, was irrelevant. (Tr. 171.) The trial court overruled the objection on the ground that Sergeant Morey was going to testify as to Petitioner's statement to him, which would include reference to the escape conviction. (*Id.*)

Applying the same standard set forth in *Strickland*, the Michigan Court of Appeals rejected Petitioner's claim, stating:

> Defendant also asserts that he was denied the effective assistance of counsel where his attorney failed to object to evidence concerning defendant's prior prison escape. To establish an ineffective assistance of counsel claim, defendant first must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms. The defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy. Second, the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).
>
> A prosecution witness testified that he was part of an emergency response team that recovered defendant after an escape. The testimony did not reveal that defendant was convicted of prison escape, and defense counsel may have reasonably determined that an objection would be more damaging than the testimony. *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Moreover, where the evidence of defendant's guilt was overwhelming, defendant was not prejudiced by the admission of the evidence or by the inaction of counsel, and we fail to see any prejudice as the jury already knew of defendant's prisoner status. *See People v Reed*, 449 Mich 375, 401; 535 NW2d 496 (1995).

(MCOA Op. 1-2.)

The decision of the Michigan Court of Appeals was not an unreasonable application of *Strickland*. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). Petitioner has not overcome the

presumption that counsel chose not to object to Burns' testimony so as not to draw further attention to Burns' unsolicited reference to Petitioner's escape. Later in the proceedings when the prosecutor purposefully elicited testimony from Petitioner on cross-examination that he had a conviction for prison escape, defense counsel made an appropriate objection. Petitioner, therefore, cannot show that counsel's performance fell below an objective standard of reasonableness.

While the Court need not reach the issue of prejudice, *Strickland*, 466 U.S. at 697, Petitioner cannot show that he was prejudiced by counsel's failure to object to Burns' testimony. As noted by the Court of Appeals, the jury already knew from the circumstances of the charge against him that Petitioner was a prisoner. Furthermore, the trial court, over the objection of defense counsel, permitted the prosecutor to elicit testimony from Petitioner regarding his escape conviction. In addition, the jury heard evidence that Petitioner had previous convictions for robbery and unarmed robbery. In light of the other evidence concerning Petitioner's prisoner status and criminal history, the jury's additional knowledge that he escaped from prison was not unfairly prejudicial. In addition, as noted by the Michigan Court of Appeals, the prosecutor presented strong evidence of Petitioner's guilt.

For the same reasons that Petitioner was not prejudiced by the introduction of evidence concerning his conviction for prison escape, a motion for mistrial would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978). Accordingly, Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

### III.    Ineffective Assistance of Appellate Counsel: Ground V

In his fifth ground for habeas corpus relief, Petitioner contends that his appellate counsel was ineffective for failing to raise Grounds I and III on direct appeal. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289. Because the constitutional claims presented in Grounds I and III are without merit, Petitioner cannot show that appellate counsel was ineffective for failing to present them on direct appeal.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:   October 16, 2009                    /s/  Joseph G. Scoville                          
                                             United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).